OPINION OF THE COURT
Titone, J.
Our sentencing courts continually confront the important task of fashioning conditions of probationary sentences to rehabilitate those who have committed the often-habitual crime of driving while intoxicated. This case presents the Court with the question whether, as a condition of probation, a court may order the defendant to affix to the license plate of any vehicle he drives a fluorescent sign stating "convicted dwi.” We answer this question in the negative both because the condition is not reasonably related to defendant’s rehabilitation, and, more generally, because, in the absence of more specific legislation, such a condition is outside the authority of the court to impose.
On December 10, 1991, defendant Roy Letterlough pleaded guilty to operating a motor vehicle while under the influence of alcohol as a felony (see, Vehicle and Traffic Law § 1192 [2]). This was defendant’s sixth alcohol-related driving offense since 1971. Pursuant to the negotiated plea agreement, defendant was sentenced to five years’ probation and fined $500, his license was revoked (see, Vehicle and Traffic Law § 1193 [2]), and he was ordered to obtain alcohol treatment as directed by the Department of Probation. As an additional condition not part of the initial plea agreement, the sentencing court directed that if the Department of Motor Vehicles should reissue a driver’s license to defendant during the probationary period, he must affix to the license plates of any vehicle he drives a fluorescent sign stating "convicted dwi.” That condition specifically provides:
"16. DWI LICENSE PLATE ADDITIONS: If for any reason the N.Y. State Department of Motor Vehicles (DMV), or any other entity, restores full or conditional limited driving privileges to the Probationer prior to the full expiration of the term of Probation imposed by this Court, Probationer agrees as follows: He/she shall order and have installed at his/her sole cost and expense, within seven (7) days of such license reinstatement, two *262 (2) legible (day and night) metal, wood, plastic, or other durable and waterproof signs or plaques, affixed to the top or bottom of both the front and rear license plate of the vehicle which he/she may be driving (including owned, borrowed, leased, rented, etc.). Said signs shall state in fluorescent, large block letters 'CONVICTED DWI.’ Such signs shall be the full length of the license plate, and one-half (1/2) the width. Said signs shall be inspected and approved by the Probation Department within fourteen (14) days of such reinstatement, and at any time thereafter: they shall remain in place for the entire duration of the term of Probation imposed by this Court. Failure to install them, removal without permission, driving without them, or a police stop for any reason also noting the absence of the signs, shall be grounds— if proven in court — for a determination of VIOLATION OF PROBATION and immediate resentencing” (emphasis in original).
As to this condition, the court stated:
"I am not requiring that [the sign] be maintained permanently while others drive that vehicle, only when this individual drives that vehicle and he may design, should that contingency arise, any sort of a metal clip system so that it can be removed if anyone else in his . family or friends decide they wish to drive his car with his consent.
"I only wish to warn the public of this and only have this sign apply to this Defendant” (emphasis added).
Defense counsel argued generally that the condition violated the State and Federal Constitutions, but declined an offer to withdraw his plea. In closing, the court stated: "This gentleman is 54 years of age and I do not wish to be the one that opens a newspaper and sees that this gentleman has caused an accident that has taken an innocent person’s life because I did not do something that either warns the public or treated his problem. I hope to be doing both.” The prosecution informed the court that defendant did not waive his right to appeal as part of the plea and the court specifically invited defendant to challenge the legality of the special condition on appeal.
*263 The Appellate Division affirmed. Citing two Florida cases (Goldschmitt v State, 490 So 2d 123; Lindsay v State, 606 So 2d 652), the Court found "no statutory or constitutional violation in the imposition of [the special condition requiring defendant to place the fluorescent signs on his car]” (205 AD2d 803, 804). A Judge of this Court granted defendant’s application for leave to appeal as well as a stay of enforcement of the disputed special condition pending the determination of the appeal. Defendant here challenges the legality of that special condition, arguing, in part, that the court was not empowered to order it under Penal Law § 65.10.[1]
Our analysis of the propriety of the special license plate condition necessarily begins with a review of Penal Law § 65.10 which grants courts the authority to fashion conditions on a sentence of probation. The statute directs, as a general proposition, that "conditions of probation * * * shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so” (Penal Law § 65.10 [1]). The statute provides that the court "shall, as a condition of the sentence, consider restitution or reparation and may, as a condition of the sentence, require that the defendant” engage in or refrain from certain enumerated types of conduct (Penal Law § 65.10 [2]). The list includes directives to "[a]void injurious or vicious habits,” "[r]efrain from frequenting unlawful or disreputable places,” maintain suitable employment, undergo medical or psychiatric treatment, participate in alcohol or substance abuse programs, support dependents and meet family responsibilities, make restitution or reparation, perform community service, if under 21, reside in a suitable location and contribute to his or her own support, post bond or security for performance of any condition, and observe conditions as specified in an order of protection (see, Penal Law § 65.10 [2] [a]-[k]). Additionally, because the conditions of probationary sentences must be tailored to the particular defendant’s case, and an exhaustive list of behavioral conditions would therefore have been impossible, the statute includes a catch-all provision which grants the court wide latitude to require the defendant to "[s]atisfy any other conditions reasonably related to his [or *264 her] rehabilitation” (Penal Law § 65.10 [2] [l] [emphasis added]).
A probationary sentence " 'is a method of offering an offender an opportunity to rehabilitate himself, without institutional confinement, under the supervision of a probation officer and the continuing power of the court to use a more stringent sanction in the event the opportunity is abused’ ” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 65, at 204, quoting Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00, at 260).
The overriding purpose of imposing a sentence of probation in lieu of other punishment is to rehabilitate "the convicted criminal by giving him appropriate treatment, in order to * * * return him to society so reformed that he will not desire or need to commit further crimes” (1 LaFave and Scott, Substantive Criminal Law § 1.5, at 32-33). As has been aptly noted, "[i]t is perhaps not entirely correct to call this treatment 'punishment,’ as the emphasis is away from making [the probationer] suffer and in the direction of making his [or her] life better and more pleasant” (id., at 33 [emphasis added]). The utility of rehabilitation as a vehicle for preventing criminal behavior "rests upon the belief that human behavior is the product of antecedent causes, that these causes can be identified, and that on this basis therapeutic measures can be employed to effect changes in the behavior of the person treated” (id., at 33). The focus of rehabilitation is primarily on healing the individual. Indeed, when a criminal act stems from a substance abuse problem, the use of sentencing conditions as a tool of rehabilitation is especially meaningful, since there are specific therapeutic options that may well ameliorate the underlying condition and thereby remove the condition associated with the criminal behavior (see, e.g., People v Berkley, 152 AD2d 788).
Penal Law § 65.10’s delineation of typical probationary sentences reflects this rehabilitative aim. Significantly, the conditions enumerated in Penal Law § 65.10 (2) (a)-(k) are rehabilitative in nature, focusing on restoring the probationer to the status of a law-abiding member of the community. None have an inherently punitive aim, although many — such as those requiring a probationer to make restitution, refrain from frequenting "disreputable places” or to participate in an alcohol or substance abuse program — impose unpleasant restric *265 tians on the probationer’s freedom and thus may have incidental punitive and deterrent effects (see, Brilliant, The Modern Day Scarlet Letter: A Critical Analysis of Modem Probation Conditions, 1989 Duke LJ 1357, 1372, and n 94 [probation conditions may serve punitive, rehabilitative and deterrent functions]).
Despite the inherent overlap and the difficulty in drawing lines between rehabilitative and punitive or deterrent sanctions, the Legislature did not mention punishment or deterrence as goals to be obtained through the imposition of probationary conditions pursuant to Penal Law § 65.10. Rather, Penal Law § 65.10 quite clearly restricts probation conditions to those reasonably related to a defendant’s rehabilitation (Penal Law § 65.10 [2] [l]). Given the singular focus of the statute on rehabilitation of the individual, the Legislature clearly intended to authorize conditions of probation that are fundamentally "rehabilitative” in the sense of that word that distinguishes it from the societal goals of punishment or deterrence (see, 1 LaFave and Scott, Substantive Criminal Law § 1.5, at 31, 33).[2] Those goals are better served by other, more severe criminal sanctions, such as incarceration, and are reserved for society’s more serious offenders. By contrast, probation is a criminal remedy generally considered useful only in cases where the offender does not present "a serious threat to the public” and where "imprisonment is not required as a deterrent to others” (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00 [1], at 261).
The degree of threat this defendant posed to society and whether he was an appropriate candidate for probation, given his criminal history, are questions not before this Court. Rather, our inquiry must focus solely on whether, having determined that probation was the appropriate criminal sanction for defendant, County Court acted within the parameters of the probationary sentencing structure authorized by Penal *266 Law § 65.10.[3] Here, the court appropriately directed, as a means of rehabilitating defendant, that he participate in a substance abuse program under the direction of the Probation Department. Such a measure is clearly geared towards rehabilitating a probationer because it relates to the correction of the underlying substance abuse problem at the root of defendant’s criminal behavior. However, the same may not be said of the "convicted dwi” sign condition. As the sentencing court made clear, its true design was not to advance defendant’s rehabilitation, but rather to "warn the public” of the threat presented by his presence behind the wheel. Beyond that, public disclosure of a person’s crime, and the attendant humiliation and public disgrace, has historically been regarded strictly as a form of punishment (see generally, Brilliant, The Modem Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions, op. cit.). Undeniably, the condition of the DWI license plate sign imposed here was in large part intended to punish defendant, but the Legislature has determined that that purpose is better served by other penal sanctions not authorized by section 65.10.
The punitive and deterrent nature of the disputed "scarlet letter”[4] component of the probationary conditions here overshadows any possible rehabilitative potential that it may generate and thus is out of step with the various other devices specifically authorized by Penal Law § 65.10 (2) (a)-(k). Indeed, the public disclosure component of the order of conditions placed on defendant here may even negate any positive effect derived from the imposition of other therapeutic conditions, such as the requirement that defendant participate in an alcohol treatment program (see, People v Johnson, 174 111 App 3d 812, 528 NE2d 1360; see also, 1 LaFave and Scott, Substantive Criminal Law § 1.5 [b], at 37). Notably, the forced advertisement of a probationer’s DWI conviction is inconsistent with the need for confidentiality which is ordinarily deemed a mandatory component of such treatment programs (see, 15 NYCRR 134.16).
More importantly, the detailed condition imposed here is *267 objectionable because in fashioning it the trial court invaded the legislative domain. Under this State’s jurisprudence, the creation of punishment for crimes rests within the realm of the Legislature (People v Byrne, 77 NY2d 460, 467-468). A sentencing court simply cannot impose forms of punishment not authorized by statute for a particular crime. Accordingly, the obvious and overriding punitive component of the disclosure order here renders the condition one that must be prescribed by the Legislature.
Even if viewed as a measure to protect the public through warnings, the condition imposed here is one requiring legislative involvement because of the obvious need for State-wide uniformity and the kind of policy choices that only an elected Legislature can make (see, e.g., Sexual Offender Registration Act [Megan’s Law], L 1994, ch 133 [New Jersey] [authorizing disclosure of a released defendant’s prior convictions under certain controlled conditions]). Indeed, the statutory precedent from other jurisdictions that the People cite (see, e.g., Iowa Code Annot § 321J.4; Minn Stat Annot § 168.041 [6]; Ohio Rev Code Annot § 4503.231) serves only to demonstrate that the public disclosure of a probationer’s conviction as a method of providing deterrence and warning to the public is a reasonable policy choice that can be made after testing through the deliberative process of a legislative body.[5]
Here, in addition to the more general need for uniformity and State-wide standards, there is a more particularized need for legislative involvement because of the safety and regulatory concerns that are raised by the notion of using license plates or vehicle accessories to advertise an individual’s criminal history. Similar concerns have led the Legislature to authorize the Commissioner of the Department of Motor Vehicles to design the form, content and method of attachment of license plates, equipment and accessories used upon motor vehicles (see, Vehicle and Traffic Law §§ 300, 401 [3]; § 402 [1], [2]; see also, § 215 [b]).[6] The Legislature has specifi *268 cally directed that "[n]umber plates shall be kept clean and in a condition so as to be easily readable and shall not be covered by glass or any plastic material, and the view thereof shall not be obstructed by any part of the vehicle or by anything carried thereon” (Vehicle and Traffic Law § 402 [1] [emphasis supplied]). Manifestly, a judicial order to attach a special plate to the one prescribed by the Commissioner runs afoul of this directive and creates a very real impediment for traffic and law enforcement authorities who must depend on the readability of the information displayed on vehicular license plates. Moreover, a judicial order that gives the convicted motorist and the Probation Department discretion to determine the material and fastening to be used undermines the legislative command to use "reflectorized material according to specifications prescribed by the commissioner” (Vehicle and Traffic Law § 401 [3]) and gives rise to potential safety problems, including damage or injury caused by disengagement of the sign on the highway. As a practical matter, it is difficult to imagine how this or any defendant would safely construct the sign, which the court directed should be made of metal, wood or plastic and fastened by some type of "metal clip system.” The distraction occasioned by special judicially ordered "scarlet letter” plates and the reactions of other motorists upon seeing them also poses a potential safety threat.[7]
Notably, although it was aware of the possibility of using special license plates (see, 1983 NY Senate Bill S 4861), our Legislature has chosen instead to address the public safety problem of recidivist drunk drivers by authorizing other types of law enforcement tools. A recent enactment authorizes courts to order a defendant, as a condition of probation, to install an "ignition interlock device” that attaches to the vehicle’s steering mechanism and ignition (Vehicle and Traffic Law § 1198). The driver must then breathe into a device that chemically measures alcohol content both before the car can be started and at regular intervals thereafter. Clearly, no such legislative initiative would have been necessary if this type of condition could have been imposed by the courts on a case-by-case basis under Penal Law § 65.10’s existing catch-all provi *269 sion. By parity of reasoning, the special license-plate condition should be available as a sentencing tool only after similar legislative deliberation and study. Additionally, when this statute was passed in 1988 (L 1988, ch 713), it specifically provided that use of the ignition interlock system may be directed as a condition of probation where the court determines that "such a condition is necessary to ensure the public safety” (Vehicle and Traffic Law § 1198 [3] [d]). Given that the Legislature explicitly added the promotion of public safety as a goal to be achieved by this new law-enforcement tool, the reference in the probation statute’s catch-all provision to the lone goal of rehabilitation renders County Court’s stated public safety motivation for imposing the special condition improper.
While innovative ideas to address the serious problem of recidivist drunk driving are not to be discouraged, the courts must act within the limits of their authority and cannot overreach by using their probationary powers to accomplish what only the legislative branch can do. Simply put, the creation of new criminal penalties and the regulation of highway safety cannot be achieved through the simple expedient of the probation statute’s catch-all provisions (Penal Law § 65.10 [2] [l]). Since the "convicted dwi” sign ordered here cannot under any view be regarded as a rehabilitative measure authorized by Penal Law § 65.10, and the creation of such a penalty out of whole cloth usurps the legislative prerogative, the condition, however well-intended, cannot be upheld.
Accordingly, the order of the Appellate Division should be reversed, the plea vacated and the case remitted for further proceedings in accordance with this opinion.

. Defendant’s failure to argue at sentencing that the County Court was not empowered to impose the special DWI license plate condition under Penal Law § 65.10 does not impede our review of that claim because it involves the " 'essential nature’ of the right to be sentenced as provided by law” (see, People v Fuller, 57 NY2d 152, 156).

. Indeed, when the Legislature enacted Penal Law § 65.10 in 1965 (L 1965, ch 1030), it was likely influenced by the then-prevailing penological premise that individuals could be rehabilitated or therapeutically "cured” of their criminal tendencies and that the remedy of probation — intended solely for less serious offenders — was meant to bring about such rehabilitation. Importantly, Penal Law § 65.10 is a near replica of the 1962 enactment of Model Penal Code § 301.1, which is contained in the part entitled "Treatment and Correction” (emphasis added).

. The dissent’s suggestion that the punitive and deterrent features of the special condition here are warranted in light of defendant’s recidivism and the failure of prior criminal sanctions (dissenting opn, at 276) is more appropriately directed at the propriety of the mode of punishment selected here — e.g., probation versus incarceration — and the punitive goals sought to be achieved thereby.

. See, Hawthorne, The Scarlet Letter (Bantam Classic ed 1986).

. Significantly, there was an initiative in our own State Legislature to consider the use of special license plates to identify individuals formerly convicted of DWI offenses. Under Senate Bill S 4861 (1983), the Commissioner of Motor Vehicles would have been directed "to study and investigate [the] feasibility” of that proposal. The measure was not adopted.

. For example, the Commissioner is required to "adopt standards and specifications * * * for the size, design and mounting of [the official] slow-moving vehicle emblem” (Vehicle and Traffic Law § 375 [36] [a] [emphasis added]; see also, 15 NYCRR 68.5) and to regulate the use and placement on *268 vehicles of driving-school or student-driver signs (see, 15 NYCRR 76.11 [d] [3]).

. While we are undoubtedly aware of the obvious dangers caused by drunk drivers, the attachment of a "convicted dwi” sign to a car also presents real public safety concerns which require legislative regulation and do not deserve to be lightly dismissed (see, dissenting opn, at 277).