OPINION OF THE COURT
Cipaeick, J.
In People v Letterlough (86 NY2d 259), this Court announced a set of guiding principles to determine whether conditions of probation are authorized by the probation statute’s catch-all provision (see, Penal Law § 65.10 [2] [l]). Based on these interpretive guidelines, we now invalidate the extra-statutory probationary condition of electronic monitoring at issue in this case.
On October 27, 1993, defendant was arrested for felony counts of driving while intoxicated and aggravated unlicensed *774 operation of a motor vehicle in the first degree. Pursuant to a plea agreement, defendant pleaded guilty to a superior court information charging him with driving while intoxicated as a felony and was sentenced by County Court to a five-year term of probation, to include six months of incarceration in county jail and one year of electronic monitoring. County Court also ordered defendant to attend a victim impact panel and pay a fine and administrative fees in the amount of $1,155. At sentencing, defendant voiced an objection to the electronic monitoring.
The Appellate Division affirmed defendant’s sentence, rejecting defendant’s argument that the condition of electronic monitoring was beyond County Court’s power to impose (People v McNair, 212 AD2d 550). A Judge of this Court granted leave to appeal and we now reverse.
Analysis of the issue on appeal — whether electronic monitoring is a statutorily authorized condition of probation — begins and ends with People v Letterlough (86 NY2d 259, supra). In Letterlough, this Court invalidated the scarlet-letter condition of probation that required an individual convicted of driving while intoxicated to affix a fluorescent sign to the license plate of his car bearing the words, "convicted dwi.” The Court cited two separate reasons for striking down the probationary condition as exceeding the sentencing court’s authority under Penal Law § 65.10 (2) (l). First, the condition of probation was not fundamentally rehabilitative, but was predominantly punitive and deterrent. Second, the condition could not be imposed absent specific legislative authorization because of the difficult policy choices involved and the need for uniform State-wide standards. For these very reasons, the probationary condition of electronic monitoring at issue in this case similarly exceeds the court’s authority under the Penal Law.
Penal Law § 65.10 (2) (l) permits a sentencing court to fashion probationary conditions "reasonably related to * * * rehabilitation.” In Letterlough, we rejected an expansive reading of section 65.10 (2) (l) and held that given the probation statute’s "singular focus” on rehabilitation, the catch-all provision only permits probationary conditions that are "fundamentally 'rehabilitative’ in the sense of that word that distinguishes it from the societal goals of punishment or deterrence” (86 NY2d, at 265, supra). If the condition of probation is not "fundamen *775 tally rehabilitative,” we held, it is invalid notwithstanding any incidental rehabilitative effects.*
A condition of electronic monitoring requires the defendant to wear an electronic device that transmits a signal to a central computer alerting the Probation Department when the defendant travels beyond a certain distance in violation of sentence restrictions. In an effort to demonstrate the rehabilitative purpose of the electronic monitoring in this case, the People rely on the sentencing court’s statement that electronic monitoring is necessary to provide the court "reasonable assurance that you’re going to comply with treatment, that you’re going to recognize that you can’t do this anymore.” However, a reading of the entire relevant passage from the record reveals that the sentencing court was motivated by something other than rehabilitation. In response to defendant’s objection to the condition of electronic monitoring, the court stated:
"[Y]ou have to earn society’s trust not to drive a car and get drunk. And I looked at your record and you have three DWI’s in your past. And so I have to assure myself that the world is safe from your driving. The only way I could do that is to either send you to state prison or to enter an arrangement like this where I have some reasonable assurance that you’re going to comply with treatment, that you’re going to recognize that you can’t do this anymore. And between the time you get out of jail and the time they let you off the electronic monitor, if you are compliant with the terms of probation, then you will have earned that trust.”
This case is thus remarkably similar to Letterlough in that the sentencing court’s "true design was not to advance defendant’s rehabilitation, but rather to 'warn the public’ of,” or in this case protect the public from, "the threat presented by [defendant’s] presence behind the wheel” (86 NY2d, at 266, supra). Because the sentencing court’s true aims in this case were public safety and surveillance, not rehabilitation, Letter-lough requires that the condition of electronic monitoring be invalidated.
*776 As the sentencing court itself stated, the electronic monitoring was imposed primarily to "assure [the court] that the world is safe from [defendant’s] driving.” This is plainly a public safety aim. According to Letterlough, questions of public safety, such as the "degree of threat this defendant posed to society,” may not be considered in determining whether a condition of probation is proper under the catch-all provision (86 NY2d, at 265, supra). The promotion of public safety, while commendable, is not a "fundamentally rehabilitative” purpose and will not validate a condition of probation under Penal Law § 65.10 (2) (l) (see, Letterlough, 86 NY2d, at 269, supra ["the reference in the probation statute’s catch-all provision to the lone goal of rehabilitation renders County Court’s stated public safety motivation for imposing the special condition improper”]).
In tandem with the public safety aim of the electronic monitoring, the sentencing court also imposed this condition of probation to keep defendant under the Probation Department’s surveillance. However, the use of electronic monitoring as a surveillance device serves the goal of specific deterrence by incapacitating defendant from drinking and driving, not the distinct goal of rehabilitation (cf., Kagehiro, Psycholegal Issues of Home Confinement, 37 St Louis U LJ 647 [1993] ["a home confinee convicted of DUI may be prevented from driving while drunk, but home confinement does not prevent drinking”]). If surveillance has any rehabilitative effect, it is only in the purely incidental sense of restricting defendant’s mobility and thereby reducing his opportunity for illicit behavior.
Finally, the use of electronic monitoring raises a host of policy issues — penological, ethical, technological, and fiscal— that are the province of the Legislature, not the Judiciary (see, People v Letterlough, 86 NY2d 259, 267, supra). While the People attempt to downplay the need for legislative involvement by citing defendant’s failure to demonstrate any abuses associated with the particular probationary program in this case, a ruling upholding electronic monitoring would inevitably lead to the uneven and intrusive application of the electronic monitoring technology as courts around the State experiment with this unregulated sentencing tool. Under the circumstances, a sentencing alternative such as electronic monitoring requires legislative enactment of uniform standards to regulate its use (cf., Letterlough, 86 NY2d, at 267, supra; see generally, Burns, Electronic Home Detention: New Sentencing Alternative Demands Uniform Standards, 18 J Contemp L 75 [1992]).
*777 In light of this analysis, we do not reach defendant’s arguments that the sentencing court improperly delegated sentencing power to the Probation Department or that the condition of electronic monitoring constituted an extension of imprisonment in violation of Penal Law § 60.01 (2) (d).
Accordingly, the order of the Appellate Division should be reversed, the plea vacated and the case remitted for further proceedings on the superior court information.

 The converse of this rule, as we recognized in Letterlough, is that a condition of probation that is fundamentally rehabilitative will be upheld notwithstanding incidental punitive or deterrent effects (86 NY2d, at 264-265, supra). Thus, the dissent’s concern that our holding limits permissible conditions of probation to those that are "exclusively — not merely primarily — rehabilitative” is unfounded (dissenting opn, at 780).