OPINION OF THE COURT
Robert Charles Kohm, J.
The defendant is an illegal alien. She has pleaded guilty to a *459 class D drug felony and was sentenced to a five-year term of probation. A condition of the sentence directs her to report to the immigration authorities to clarify her status as an alien.
The issue raised by this directive is whether the order is unreasonable and excessive, hence illegal. Unreasonable in that it contributes nothing to her rehabilitation; excessive in that it requires her to violate her rights against self-incrimination.
I
NATURE OF PROBATION
Probation is a sentence (Penal Law § 65.00). It is "a method of offering an offender an opportunity to rehabilitate himself, without institutional confinement, under the supervision of a probation officer and the continuing power of the court to use a more stringent sanction in the event the opportunity is abused” (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00,. at 260).
A sentence of probation provides a defendant with a "period of grace” to aid in her rehabilitation and is not a right; it is a favor and not a contract, individualized in each case to give careful, humane and comprehensive consideration permitting an offender to participate in her rehabilitation (Burns v United States, 287 US 216, 220).
In general, the conditions of probation are within the discretion of the court. The catch-all provision of Penal Law § 65.10 (1) and (2) permit the court, in its discretion, to set any conditions it deems reasonably necessary to insure that defendant leads a law-abiding life or assists her in doing so and "[s]atisfy any other conditions reasonably related to [her] rehabilitation”. (Penal Law § 65.10 [2] [l].) Probation imposes a duty on a defendant to work with legal agencies and to "give * * * law enforcement authorities genuine and sincere co-operation” (Matter of People v Mauro, 41 Misc 2d 847, 849).
II
FEDERAL IMMIGRATION STATUTES
Historically, the Alien Act of 1798, known as the Alien and Sedition Laws, authorized the President to expel aliens deemed dangerous by the President. Notwithstanding that immigration was encouraged by the Federal Government when the United States was expanding, some States sought to regulate *460 immigration. The United States Supreme Court declared State laws which sought to regulate immigration to be unconstitutional in that the imposition of taxes and indemnification bonds upon the master or owner of a vessel for each alien passenger was a regulation of commerce and not a power reserved to the States (Henderson v Mayor of City of N. Y., 92 US 259 [1875]).
The Immigration Act of 1990 redefined and broadened laws with respect to criminal aliens and completely eliminated judicial recommendations against deportation. Prior to 1990, 8 USC § 1251 (a) (4) stated that any alien in the United States be deported who has been convicted of a crime involving moral turpitude. However, section 1251 (b) stated that deportation was not applicable if the sentencing court made, at the time of first imposing judgment or passing sentence, a recommendation to the Attorney General that such alien not be deported. This discretionary power was nullified in 1990 when section 1251 (b) was revised to omit the sentencing court’s power to make such recommendation.
Federal law defines "conviction” in an immigration context (White v Immigration & Naturalization Serv., 17 F3d 475, 479). Within the statutory provisions, deportation is a matter of Federal law interpreted in conformity with 8 USC § 1251 (Aguilera-Enriquez v Immigration & Naturalization Serv., 516 F2d 565; Yanez-Popp v U.S. Immigration & Naturalization Serv., 998 F2d 231).
Thus, Federal statutes and case law clearly establish that Congress has the power to order deportation of aliens whose presence in this country is deemed harmful. Notwithstanding that the underlying reasons for deportation are based on convictions of crimes, deportation is not a punishment. As stated by Mr. Justice Holmes in Bugajewitz v Adams (228 US 585, 591), deportation "is simply a refusal by the Government to harbor persons whom it does not want. The coincidence of the local penal law with the policy of Congress is an accident”.
Nor is Federal alien policy based solely on compliance with this country’s laws. In Harisiades v Shaughnessy (342 US 580, 588-589), the Supreme Court noted that Federal rules pertaining to aliens are intricately interwoven with contemporary policies dealing with foreign relations, war power and the maintenance of a republican form of government, all of which are exclusively entrusted to the political branches of government.
In essence then, an alien may be deported for violation of specific Federal laws. Further, the power to expel aliens is a *461 power of the political branches of government and is exercised entirely through the executive branch of the Federal Government with judicial review as authorized by Congress (Pilapil v Immigration & Naturalization Serv., 424 F2d 6, 11, cert denied 400 US 908).
III
NEW YORK STATE IMMIGRATION POLICY
New York has recently taken steps to further Federal immigration policy. The Sentencing Reform Act of 1995 was enacted by the State Legislature and signed into law by Governor George Pataki in July 1995. Laws of 1995 (ch 3, § 30) amend CPL 220.50 (7) with respect to the acceptance of a guilty plea from a noncitizen of the United States. Section 40 amends Executive Law § 259-i (2) (d) (i) and (ii) so that those convicted of offenses other than A-l felonies pursuant to Penal Law article 220 (narcotics charges) or violent felonies, after the inmate’s period of imprisonment has commenced, and the inmate has a final order of deportation, may be paroled conditionally to the Immigration and Naturalization Ser vied (I.N.S.) in order that deportation may be promptly executed.
This revision of New York State laws was prompted, in part, by the fact that foreign-born inmates in custody of the New York State Department of Correctional Services have increased from 3,017 in 1985 to 8,574 in 1994. The burgeoning numbers of prison inmates, especially in the noncitizen class, has resulted in overcrowding conditions, as has the incarceration of those convicted of nonviolent felonies.
The Department of Correctional Services, the Executive Office for Immigration Review and the Immigration and Naturalization Service have instituted an institutional hearing program at Department of Corrections Reception Centers which permits a foreign-born inmate to meet with an immigration officer more quickly than possible in most I.N.S. district offices. The goal of the institutional hearing program is to complete deportation hearings before an inmate is released from the custody of Corrections. Prior to the programs’ restructuring in 1994, there were inmates who were released before a decision was made as to their status by an Immigration Judge. However, since restructuring in 1994, 751 deportation orders were lodged against foreign-born inmates through the institutional hearing program. Thus New York State is attempting to structure its laws in order to implement Federal policy and insure prompt deportation hearings.
*462 IV
defendant’s guilty plea
In the case at bar, the People offered and the defendant pleaded guilty to criminal sale of a controlled substance in the fifth degree, a class D felony. At the time of the plea, defense counsel did not specifically address the consequences of the plea as to defendant’s immigration status.
CPL 220.50 (7), as amended, mandates that prior to accepting a plea of guilty to certain felonies, the defendant must be advised by the court on the record that if defendant is not a citizen of the United States, the result of the plea and the court’s acceptance thereof may result in defendant’s deportation, exclusion from admission to the United States or denial of naturalization. The court must also advise a noncitizen defendant that if or when the defendant becomes the subject of a final order of deportation issued by the Immigration and Naturalization Service, the defendant may be paroled to the custody of the I.N.S. for deportation at any time after commencement of the indeterminate prison sentence imposed resulting from defendant’s plea. Notwithstanding this mandatory language, the statute provides that failure to so advise the defendant of the consequences of his plea "shall not be deemed to affect the voluntariness of a plea of guilty or the validity of the conviction, nor shall it afford a defendant any rights in a subsequent proceeding relating to such defendant’s deportation, exclusion or denial of naturalization”. (CPL 220.50 [7].)
It is well-settled law that a trial court has a constitutional duty to ensure that a defendant has a full understanding of the plea and its consequences (Boykin v Alabama, 395 US 238, 244; People v Harris, 61 NY2d 9, 19). Further, there is no particular litany the court must engage in when allocuting the defendant. Due process requires that the record must clearly reflect that the "plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant” (North Carolina v Alford, 400 US 25, 31, citing Boykin v Alabama, supra).
In People v Ford (86 NY2d 397, 403), the Court of Appeals stated "a criminal court is in no position to advise on all the ramifications of a guilty plea personal to a defendant”. The Court further drew a distinction (at 403) between the " 'direct’ ” consequences of which the defendant must be advised and the " 'collateral consequences’ ” of which defendant need not be advised, citing Fruchtman v Kenton (531 F2d 946, 948, cert *463 denied 429 US 895). The Court defined a direct consequence as "one which has a definite, immediate and largely automatic effect on defendant’s punishment” (at 403).
In Ford, the Court illustrated "collateral consequences” and held that failure to warn of such does not warrant vacating a plea because these consequences are "peculiar” (supra, at 403) to a defendant and result from actions taken by agencies over which a court has no control, citing United States v Sambro (454 F2d 918, 922) and Sanchez v United States (572 F2d 210, 211). Since deportation is a collateral consequence of conviction peculiar to an individual and not within the control of the court system, New York State appellate courts and Federal courts have consistently held that the court need not advise a defendant of the possibility of deportation before accepting a plea (see, People v Boodhoo, 191 AD2d 448; People v Williams, 189 AD2d 910, lv denied 81 NY2d 978; Fruchtman v Kenton, supra; Cuthrell v Director, Patuxent Inst., 475 F2d 1364, cert denied 414 US 1005; United States v Parrino, 212 F2d 919, 921, cert denied 348 US 840).
In addition, the Ford Court held in a footnote (supra, at 404) that failure to warn defendant of the possibility of deportation did not render a plea allocution improper. It indicated that, notwithstanding the language of the New York Sentencing Reform Act of 1995, failure to warn the defendant of the possibility of deportation does not affect the voluntariness of the plea.
V
CONCLUSION
Based then on the pertinent Federal and State statutes, this court concludes that since deportation is not a punishment but the refusal of the Federal Government to harbor persons whom it does not want (Bugajewitz v Adams, supra), and alien policies are exclusively entrusted to the political branches of government (Harisiades v Shaughnessy, supra), deportation of a citizen is exercised entirely through the executive branch of the Federal Government with such judicial review as authorized by Congress (Pilapil v Immigration & Naturalization Serv., supra). Nor is such deportation an unconstitutional denial of equal protection (Guan Chow Tok v Immigration & Naturalization Serv., 538 F2d 36, 38). As such, a New York State court does not have the authority or discretion to prevent the deportation of a noncitizen (8 USC § 1251 [a] [2] [B] [i]; *464 Aguilera-Enriques v Immigration & Naturalization Serv., supra; Yanez-Popp v U.S. Immigration & Naturalization Serv., supra).
This court further concludes that since defendant’s plea was knowingly, voluntarily and intelligently made, with the advice of counsel, it passes constitutional muster (Boykin v Alabama, supra; People v Harris, supra). As stated in People v Ford (supra), the failure to warn of the collateral consequences does not affect the voluntariness of the plea. This is so, especially where, as here, meaningful representation was provided by defense counsel.
Assuming, arguendo, that defendant did not plead guilty but went to trial and was found guilty by p jury of her peers, defendant would automatically be subject to 8 USC § 1251 (a) (2) (B) (i) and Executive Law § 259-i (2) (d) (i) and (ii). Thus, the sentencing court would have no authority to alter the course of defendant’s deportation proceedings.
VI
THE REASONABLENESS OF THE CONDITION
A defendant is sentenced to probation in order that the court maintain control oyer her and her sentence can be revoked if defendant violates any conditions. Were the court to then sentence this defendant to a period of incarceration, she would automatically be subject to Executive Law § 259-i (2) (d) (i), (ii) and defendant’s conviction and alien status would be reported to the immigration authorities, triggering deportation procedures.
Under these circumstances, the court concludes that a condition of probation directing defendant to report to the immigration authorities to clarify her status would be reasonable and within the sentencing court’s authority since it will contribute to defendant’s law-abiding goal pursuant to Penal Law § 65.10 (1), especially since the Probation Department has the power to notify the Immigration and Naturalization Service of the instant conviction.
IS SUCH CONDITION EXCESSIVE?
One point remains and this is whether defendant’s obligation to report to the immigration authorities is excessive in that it requires her to personally state that she is an illegal alien, thus violating her right to refrain from incriminating herself.
*465 A review of the facts in this case establishes that there is no unlawful incrimination for two reasons. The first reason is that the Fifth Amendment states that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself’. It might be argued that informing the authorities of an alien status could lead to potential deportation pursuant to 8 USC § 1251. While this possibility exists, our courts have consistently held that deportation proceedings are classified as civil in nature rather than criminal (Harisiades v Shaughnessy, supra, at 594-595; United States v Bodre, 948 F2d 28, 31). Since her alien entry deals with matters that are civil in nature, the Fifth Amendment does not apply in this case. Hence, there is no merit in a constitutional violation argument.
The second reason is the purpose of probation itself:
"The overriding purpose of imposing a sentence of probation in lieu of other punishment is to rehabilitate 'the convicted criminal by giving him appropriate treatment, in order to * * * return him to society so reformed that he will not desire or need to commit further crimes’ * * *
"Penal Law § 65.10’s delineation of typical probationary sentences reflects this rehabilitative aim. Significantly, the conditions enumerated in Penal Law § 65.10 (2) (a)-(k) are rehabilitative in nature, focusing on restoring the probationer to the status of a law-abiding member of the community” (People v Letterlough, 86 NY2d 259, 264 [emphasis supplied]).
Thus, one who accepts probation does so on the understanding that she will make every effort to become a "law-abiding member of the community”. In the present case, it is difficult to see how defendant can reach that goal without initially clarifying her alien status. While this might "impose unpleasant restrictions on the probationer’s freedom” (People v Letter-lough, supra, at 264-265), the conditions are not unduly harsh or excessive since they reflect both Federal and State policy to the extent that they foster lawful entry into this country. Basically then, this court reasons that one who accepts the benefit of probation and continues to reside in this country owes a duty to remain here as a lawful resident.
Therefore, this court is of the opinion that the condition imposed was neither harsh nor excessive and within the spirit of Penal Law § 65.10.
*466 Accordingly, defendant is directed, as a condition of probation, to report to the Immigration and Naturalization Service within 10 days of the imposition of this sentence of five years’ probation for a clarification of her status as an alien.