■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD J. GOULD, Appellant. [662 NYS2d 520] —Appeal by the defendant from a judgment of the County Court, Westchester County (Lange, J.), rendered January 16, 1996, convicting him of sodomy in the second degree, upon his plea of guilty, and sentencing him to five years probation.

Ordered that the matter is remitted to the County Court, Westchester County, to hear and report on whether the condition of the sentence of probation which precludes the defendant from reuniting with his family in Connecticut without permission of his "counselor and probation officer" should be stricken, and the appeal is held in abeyance in the interim. The County Court, Westchester County, is to file its report with all convenient speed.

The defendant's contention that the waiver of indictment was ineffective and that the superior court information was therefore jurisdictionally defective is without merit. The record of the court proceedings on February 6, 1995, establishes that the defendant knowingly and voluntarily waived a felony hearing and then was held "for the action of the grand jury" by the County Court, acting as a local criminal court (CPL 195.10 [1] [a]). The defendant signed a written waiver of indictment whereby he consented to be prosecuted by a superior court information and pleaded guilty to the sole charge contained therein (*see,* CPL 180.30, 195.20; *see also, People v D'Amico,* 76 NY2d 877; *People v Hart,* 171 AD2d 755; *People v Washington,* 138 AD2d 857).

We further conclude that the accusatory instrument adequately apprised the defendant of the particular crime with which he was being charged (*see, People v Ray,* 71 NY2d 849; *People v Motley,* 69 NY2d 870; *People v Iannone,* 45 NY2d 589). The defendant's nonjurisdictional challenges to the accusatory instrument were forfeited by his guilty plea (*see, People v Beattie,* 80 NY2d 840; *People v Taylor,* 65 NY2d 1; *People v Gerber,* 182 AD2d 252).

The defendant's remaining contention is that three conditions of probation imposed at sentencing were illegal because they are punitive rather than rehabilitative. These conditions require the defendant (1) to obtain permission from his parole officer to reunite with his immediate family in Connecticut, (2) to present a "travel letter" to the local police department, which must be signed and returned to his probation officer, when he travels to "another jurisdiction," and (3) to inform any future employer and the police department where he resides of the nature of his conviction and the special conditions of probation which prohibit him from associating with persons under 18 years of age.

Under Penal Law § 65.10 (2), the court may not, under the guise of rehabilitation, impose conditions which are predominantly punitive and deterrent, rather than rehabilitative (*see, People v Letterlough,* 86 NY2d 259; *People v McNair,* 87 NY2d 772). However, apart from the court's authority to impose conditions relating to rehabilitation, Penal Law § 65.10 (3) requires the court to impose certain conditions relating to supervision, and CPL 410.50 (2) imposes a duty on the probation department to supervise the defendant during his period of probation.

Penal Law § 65.10 (3) (b) provides that the defendant shall remain within the court's jurisdiction unless the court or proba-

tion officer grants him permission to travel. Since the defendant does not have an unfettered right to travel, it is reasonable for the probation department, upon granting him such permission, to fulfill its supervisory duty by requiring him to report to the local police department.

We conclude, as well, that the conditions of probation which require him to report his conviction to the police department in the community where he resides and to a future employer, should he change his current employment, are primarily rehabilitative and supervisory, rather than punitive. We note that the defendant does not contest certain other special conditions of probation which prohibit him from frequenting locations where persons under the age of 18 are likely to be present and from working in any business which provides services to or employs such persons.

However, that there may be some merit to the defendant's contention that the condition which requires him to obtain permission from his parole officer each and every time he visits his brother's family is punitive, rather than supervisory or rehabilitative. We therefore remit the matter to the County Court, Westchester County, to determine whether this condition of probation is appropriate in light of *People v Letterlough (supra)* and *People v McNair (supra).* O'Brien, J. P., Altman and Krausman, JJ., concur.

Friedmann, J., concurs in part and dissents in part and votes to modify the judgment appealed from by striking the following conditions of probation: the condition that the defendant may not reunite with his family unit without the permission of his counselor or probation officer, the condition that he must present a travel letter when he travels to a jurisdiction outside his home county, the condition that he must disclose to any police department and any prospective employer where he resides, the nature of his conviction and the special conditions of his probation, and the condition that he must inform his landlord of his conviction; and to otherwise affirm the judgment appealed from, with the following memorandum: Because several of the conditions of the defendant's probation are fundamentally punitive and/or supervisory rather than rehabilitative, they are palpably illegal and should be summarily deleted from his probationary schedule. Otherwise I concur with the majority that the defendant's conviction should be affirmed.

Penal Law § 65.10 provides that a defendant may be required, as a condition of his probation, *inter alia,* to avoid the occasion of his "vicious habits", hold a regular job, undergo therapy and/or psychiatric treatment, join an intervention program, make restitution, and/or perform public service.

In *People v Letterlough* (86 NY2d 259), the Court of Appeals invalidated a condition of probation that required the defendant to affix to his license plate a sign reading "CONVICTED DWI", because the sentencing court's "true design was not to advance defendant's rehabilitation, but rather to 'warn the public' of the threat presented by his presence behind the wheel" (*People v Letterlough, supra,* at 266). The Court observed that "public disclosure of a person's crime, and the attendant humiliation and public disgrace, has historically been regarded strictly as a form of punishment" (*People v Letterlough, supra,* at 266). Indeed, the Court declared, imposition of this "scarlet letter" condition could well "negate any positive effect derived from the imposition of other therapeutic conditions", such as his participation in rehabilitation programs, because "the forced advertisement of a probationer's * * * conviction is inconsistent with the need for confidentiality which is ordinarily deemed a mandatory component of such treatment programs" (*People v Letterlough, supra,* at 266). Citing New Jersey's Megan's Law (the equivalent of which has since been enacted in New York State—legislation which would arguably have been applicable here had it been the law at the time of this defendant's conviction), the Court underscored that a defendant's prior convictions should be publicly disclosed only subject to "controlled conditions". Such conditions could only be dictated by the Legislature, the Court observed, because of "the obvious need for State-wide uniformity and the kind of policy choices that only an elected Legislature can make" (*People v Letterlough, supra,* at 267).

Unlike the conspicuous fluorescent sign sought to be imposed in *Letterlough,* the sentencing court in *People v McNair* (87 NY2d 772) required the defendant convicted of driving while intoxicated to submit to (invisible) electronic monitoring for a year. The Court of Appeals found that this condition was invalid for the same two reasons that had informed its decision in *Letterlough,* namely: (1) "the condition of probation was not fundamentally rehabilitative, but was predominantly punitive and deterrent" and (2) "the condition could not be imposed absent specific legislative authorization because of the difficult policy choices involved and the need for uniform State-wide standards" (*People v McNair, supra,* at 774). Thus, even though electronic monitoring might have had the secondary benefit of incapacitating the defendant from drinking and driving out of the jurisdiction, "the sentencing court's true aims * * * were public safety and surveillance, not rehabilitation", with the result that the condition was invalid.

In the matter at bar, the defendant's probation was made

subject to several legitimate "rehabilitative" conditions of which he does not complain, such as a requirement that he undergo "sexual behavior counseling", that he avoid locations frequented by children, and that he eschew employment with businesses that serve or hire persons under 18. However, a number of the remaining conditions of his probation are in such flagrant violation of the parameters set by the Court of Appeals in *Letterlough* and *McNair (supra)* that the County Court itself set aside two of them: a prohibition against driving after dark and a requirement that the defendant disclose his conviction to his current employer, notwithstanding the undisputed fact that he has no exposure whatever to children in his present job.

In my estimation, the following additional conditions should similarly be set aside in summary fashion because they are punitive and/or supervisory rather than rehabilitative:

(1) The condition that the defendant may not reunite with his family unit without the permission of his counselor and probation officer. So far as the record discloses, there are no children under the age of 18 in the defendant's family, which appears to consist only of a brother who is a police officer in Connecticut. Since this condition seems designed to punish the defendant without in any way advancing his rehabilitation, it should be peremptorily declared invalid.

(2) The condition that when the defendant travels to a jurisdiction outside his home county, he must present a travel letter to the local police department announcing his conviction and inviting the officers to ask him questions about himself. The defendant must return this letter, with a police officer's signature, to his probation officer.

There is essentially no difference between this condition and the electronic surveillance requirement in *McNair,* as both have as their goals the "protection of the public" and "surveillance" rather than "rehabilitation". In effect, the condition is entirely "punitive" because the defendant, who is also a performing musician, is required to travel a great deal. An additional reason for striking this requirement is afforded by Penal Law § 65.10 (3), which dictates three mandatory conditions of a probationer's supervision. Travel is covered by subdivision (b), which provides that a defendant must "[r]emain within the jurisdiction of the court unless granted permission to leave by the court or the probation officer". Unlike Penal Law § 65.10 (2), there is no catch-all provision giving the sentencing court latitude to permit a defendant to travel subject to certain conditions: either he is permitted to travel or

he isn't. The "travel letter" at issue here expressly declares that the defendant is not "a high risk for reoffending since he would not be approved for travel if this were the case". If a probationer is otherwise qualified to travel, the courts have held that his mobility should not be made contingent upon arbitrary or punitive conditions (*see, e.g., People v James R. O.,* 36 AD2d 828).

(3) The condition that the defendant must disclose to any police department where he resides and to any prospective employer the nature of his conviction and the special conditions prohibiting him from associating with persons under 18 years of age.

Registration with the local police department would arguably be appropriate under the "controlled conditions" of New York's version of Megan's Law. However, this case is not subject to that law, but to the probation provisions of Penal Law § 65.10, and to the Court of Appeals ruling in *McNair* prohibiting conditions of probation that have surveillance as their primary purpose. Accordingly, because the requirement that the defendant disclose his conviction to his local police department is not "fundamentally rehabilitative", it is invalid as a matter of law. In any event, the defendant is well known to the local police, having cooperated fully with them and their Federal counterparts in their investigation into a child pornography ring.

It is conceivable that it should be left to the discretion of the defendant's probation officer whether or not the defendant should be required to inform a future employer about his conviction, depending on the nature of that employment. According to an uncontested term of his probation, the defendant is flatly prohibited from working or volunteering "for any business or organization that provides services to or employs persons under 18 years of age". However, one can imagine employment situations not facially covered by the above proviso that could impede the defendant's rehabilitation (e.g., certain kinds of book publishing, book sales, video production, video sales, etc.). Accordingly, I would commit this term alone to the discretion of the Probation Department, to be implemented on an ad hoc basis.

(4) The condition that the defendant inform his landlord of his conviction. Although the defendant has not protested this requirement, perhaps because he owns his own home, this Court should, *sua sponte,* not allow such an illegal condition to stand, in the event that the defendant becomes a tenant at any point during his probationary term (*see, e.g., People v Peale,*

122 AD2d 353; *People v Grant,* 92 AD2d 985; CPL 470.15 [2] [c]). The requirement could not serve any legitimate rehabilitative purpose, as it is hardly realistic to suppose that any landlord will—or for that matter should—undertake to police such a defendant's relationships with his other tenants and their children.

In my estimation, the full implementation of the foregoing conditions of probation would almost inevitably result in the defendant losing his job, his musical avocation and his home, while damaging what wholesome, supportive bonds he may enjoy with family, friends and neighbors, and undermining his self-respect. Such an outcome is the very antithesis of the "rehabilitation" contemplated by Penal Law § 65.10. Accordingly, I would strike these facially illegal conditions of probation, while otherwise affirming the defendant's conviction and sentence.