People v Hakes (2018 NY Slip Op 08538)

People v Hakes

2018 NY Slip Op 08538 [32 NY3d 624]

December 13, 2018

Feinman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 20, 2019

[*1]

The People of the State of New York, Appellant,
v
Brian Hakes, Respondent.

Argued November 15, 2018; decided December 13, 2018

People v Hakes, 143 AD3d 1054, reversed.

{**32 NY3d at 626} OPINION OF THE COURT

Feinman, J.

The principal question presented in this case is whether, as a condition of probation, sentencing courts can require defendants to wear and pay for a secure continuous remote alcohol{**32 NY3d at 627} monitoring (SCRAM) bracelet that measures their alcohol intake. We hold that they can.
In enacting Penal Law § 65.10 (4), the legislature specifically authorized sentencing courts to require defendants to wear an electronic monitoring device. Similar to other statutorily-authorized conditions of probation that implicitly require defendants to pay certain costs (see Penal Law § 65.10 [2]), the costs associated with wearing a functioning SCRAM bracelet are part and parcel of satisfaction of the condition itself. However, if a defendant demonstrates—either at the time the sentence is imposed or during the probationary period—that they are unable to afford the costs attached to a condition despite bona fide efforts to do so, the sentencing court must attempt to fashion a reasonable alternative to incarceration. Conversely, if a defendant willfully refuses to pay the costs associated with a condition when able to do so, a sentencing court is justified in revoking the defendant's probationary sentence and imposing a sentence of incarceration.
In December 2012, defendant Brian Hakes pleaded guilty to felony driving while intoxicated and aggravated unlicensed operation of a motor vehicle, an unclassified misdemeanor. County Court sentenced defendant to a term of six months' incarceration, concurrent with five years' probation. As a condition of his probation, the court [*2]required defendant to wear and pay for a SCRAM bracelet[FN1] upon his release from jail. Defendant made several payments for the SCRAM bracelet, but then stopped, resulting in the bracelet's removal by the monitoring company. Defendant claimed that an injury interfered with his ability to work and earn the income necessary to pay the monitoring fee. After a hearing on the matter, County Court revoked defendant's probation upon its determination that defendant had violated a condition of his probation because he was no longer wearing the SCRAM bracelet and imposed an indeterminate state prison term of 1 to 3 years. The Appellate Division, among other things, reversed the judgment of County Court on the basis that the sentence imposed was illegal because sentencing courts cannot require a defendant to pay for the cost of electronic monitoring (People v Hakes, 143 AD3d {**32 NY3d at 628}1054, 1056 [3d Dept 2016]). Thereafter, a Judge of this Court granted leave to appeal (29 NY3d 997 [2017]). We now reverse.[FN2]
"To a greater or lesser degree, it is always true of probationers . . . that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions' " (Griffin v Wisconsin, 483 US 868, 874 [1987], quoting Morrissey v Brewer, 408 US 471, 480 [1972]; see People v Hale, 93 NY2d 454, 461 [1999] ["In New York, as in other jurisdictions, a sentence of probation is an option among various sentencing alternatives short of confinement (and) . . . (t)he probationer, although not physically confined, remains in the legal custody of the court for the probationary period" (internal quotation marks omitted)]). Keeping in mind that probation is the product of statute, "our inquiry must focus solely on whether, having determined that probation was the appropriate criminal sanction for defendant, County Court acted within the parameters of the probationary sentencing structure authorized by Penal Law § 65.10" (People v Letterlough, 86 NY2d 259, 265-266 [1995]).[FN3]
In 1965, section 65.10 was added to the Penal Law, providing, "[i]n general" that "[t]he conditions of probation and of conditional discharge shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so" (Penal Law § 65.10 [1], as added by L 1965, ch 1030). Subdivision (2) of section 65.10 went on to enumerate conditions of probation that a court could impose on a defendant, including, among other things, that a defendant shall
"[r]efrain from frequenting unlawful or disreputable places[,] . . .
"[w]ork faithfully at a suitable employment or . . . pursue a course of study or of vocational training[,] . . .
{**32 NY3d at 629}"[u]ndergo available medical or psychiatric treatment[,] . . .
"[s]upport [their] dependents[,] . . .
"[m]ake restitution . . . or make reparation, in an amount [they] can afford to pay . . . [and]
"[p]ost a bond or other security for the performance of any and all conditions" (Penal Law § 65.10 [2] [b]-[d], [f], [g], [j] [formerly paras [b]-[f], [h], as added by L 1965, ch 1030]).
Subdivision (2) also provided a catchall provision which allowed sentencing courts to set "any other conditions reasonably related to [a probationer's] [*3]rehabilitation" (Penal Law § 65.10 [2] [l] [formerly para (i), as added by L 1965, ch 1030]). While additional conditions were subsequently added to subdivision (2), the legislature did not substantially change section 65.10 until 1996, following two decisions of this Court regarding a sentencing court's ability to impose specific conditions of probation.
In People v Letterlough, the first of these decisions, this Court reviewed a sentencing court's authority to require, as a condition of probation, that a defendant "affix to the license plate of any vehicle he drives a fluorescent sign stating 'CONVICTED DWI' " (86 NY2d at 261). The Court held that the imposition of this condition was beyond the authority of the sentencing court because "Penal Law § 65.10 quite clearly restricts probation conditions to those reasonably related to a defendant's rehabilitation" (id. at 265, citing Penal Law § 65.10 [2] [l] [the "catchall" provision]). Thus, the legislature plainly intended to authorize conditions that are "rehabilitative in nature," even though "many—such as those requiring a probationer to make restitution, refrain from frequenting 'disreputable places' or to participate in an alcohol or substance abuse program . . . may have incidental punitive and deterrent effects" (Letterlough, 86 NY2d at 264-265; see Penal Law § 65.10 [2] [a]-[k]). "Despite the inherent overlap and the difficulty in drawing lines between rehabilitative and punitive or deterrent sanctions, the Legislature did not mention punishment or deterrence as goals to be obtained through the imposition of probationary conditions pursuant to Penal Law § 65.10" (86 NY2d at 265).
A year later, in People v McNair, this Court again examined the authority of a sentencing court to set a condition of probation—this time the requirement that a defendant, who had{**32 NY3d at 630} pleaded guilty to felony driving while intoxicated, wear an electronic monitoring device for a year (87 NY2d 772, 774 [1996]). The Court held that the condition was once more beyond the authority of the sentencing court, stating that the case was "remarkably similar to Letterlough in that the sentencing court's 'true design was not to advance defendant's rehabilitation, but rather to warn the public of,' or in this case protect the public from, 'the threat presented by [defendant's] presence behind the wheel' " (id. at 775 [some internal quotation marks omitted], quoting Letterlough, 86 NY2d at 266). "Because the sentencing court's true aims in this case were public safety and surveillance, not rehabilitation, Letterlough requires that the condition of electronic monitoring be invalidated" (McNair, 87 NY2d at 775). The Court opined that the use of electronic monitoring was "the province of the Legislature, not the Judiciary" (id. at 776).
In 1996, in direct response to Letterlough and McNair (see Governor's Approval Mem, Bill Jacket, L 1996, ch 653 at 7, 1996 NY Legis Ann at 484-485), the legislature added subdivision (4) to Penal Law § 65.10, authorizing a sentencing court to require "the defendant to submit to the use of an electronic monitoring device . . . where the court, in its discretion, determines that . . . such condition will advance public safety, probationer control or probationer surveillance" (Penal Law § 65.10 [4], as added by L 1996, ch 653). The Governor commented that contrary to this Court's holding in McNair, "[a] rational criminal justice system should insist that judges . . . be scrupulously concerned about public safety in making sentencing decisions[,] . . . particularly . . . with respect to drunken driving, given its high recidivism rate and the awful carnage it causes" (Governor's Approval Mem, Bill Jacket, L 1996, ch 653 at 7, 1996 NY Legis Ann at 484). The Governor noted that when sentencing courts are "making the often difficult choice between imposing a sentence of probation or jail, the availability of electronic monitoring may be decisive" (Governor's Approval Mem, Bill Jacket, L 1996, ch 653 at 7, 1996 NY Legis Ann at 484).
The decision to sentence a defendant to probation as an alternative to jail or prison reflects a determination by the sentencing court that both society and the defendant would be better served by the individual's closely supervised release into the community, provided that certain reasonable conditions are met. "Utilized in conjunction with these conditions, . . . {**32 NY3d at 631}electronic monitoring was designed to allow defendant[s] to remain in the privacy of [their] own home with [their] family—instead of in prison—while learning to control [themselves] in the presence of alcohol" (McNair, 87 NY2d at 779 [Kaye, Ch. J., dissenting], citing Burns, Electronic Home Detention: New Sentencing Alternative Demands Uniform Standards, 18 J Contemp L 75, 89-90 [1992]). Defendant contends that while the condition requiring a probationer to submit to electronic monitoring may be permissible, the additional requirement of payment is a punitive measure that serves no public safety or deterrent goal. If defendant were correct, the legislature, in enacting subdivision (4), only meant to authorize electronic monitoring if the costs were borne by the State. There is nothing in the legislative history of Penal Law § 65.10 to support this assumption.
Rather, since its enactment in 1965, Penal Law § 65.10 has authorized a variety of conditions of probation—such as pursuing a course of study, obtaining psychiatric treatment, participating in a substance abuse [*4]program or motor vehicle accident prevention course—that concomitantly require defendants to pay certain costs or recurring fees (see Penal Law § 65.10 [2]). The costs attached to any one of these conditions were never overtly stated by the legislature, but rather understood as implicitly necessary to satisfy the condition itself. As the Court recognized in Letterlough, the fundamental rehabilitative goals of these conditions, as authorized by the legislature, outweigh any incidental punitive and deterrent effects (see 86 NY2d at 264-266; see also McNair, 87 NY2d at 778-779 [Kaye, Ch. J., dissenting] ["(t)he general rule to be drawn from Letterlough is that a court may not create its own probationary condition which is predominantly punitive in the sense that its punitive elements overshadow its rehabilitative components"]).
The condition here is no different—payment is part and parcel of the requirement that defendant wear and maintain a functioning SCRAM bracelet. To the extent the costs associated with electronic monitoring could be considered to have a punitive or deterrent effect, that effect is dwarfed by the explicit goals of subdivision (4)—to protect the public from alcohol-related offenses while assisting a defendant's rehabilitation during their probationary term (see Penal Law § 65.10 [4]; legislative history of subd [4], supra 
at 630 see also Mem of Div of Probation and Corr Alternatives at 2, Bill Jacket, L 1996, ch 653 at 21 ["(R)ehabilitation of a probationer recognizes {**32 NY3d at 632}that public safety, offender accountability, and other deterrent conditions are reasonable and legitimate conditions and can mutually co-exist as part of any probation sentence"]). Were we to hold that any monetary component of a condition that must be borne by a defendant per se invalidated said condition, sentencing courts would be divested of their broad authority to impose a myriad of probationary requirements, and consequently, would, in many instances, no longer view release into the community as a viable alternative to incarceration. In light of this, the requirement that defendant wear and pay for a SCRAM bracelet was well within County Court's statutory authority under Penal Law § 65.10 (4).
This is not to say that requiring a defendant to wear and pay for an electronic monitoring device will always be reasonable. Courts cannot impose a condition of probation that includes costs a particular defendant cannot feasibly meet. Nor can courts incarcerate a defendant who has initially agreed to meet a condition requiring a payment, but who subsequently becomes unable to do so. "Indeed, depriving probationers of conditional freedom based simply on their indigence would be an invidious denial to one class of defendants of a substantial benefit available to another" (People v Amorosi, 96 NY2d 180, 184 [2001]). Accordingly, a probationary sentence is a tentative one that by its nature may be altered or revoked pursuant to the discretion of the court during the probationary term (see Penal Law § 60.01 [2] [b]). "At any time after [a] sentence is pronounced, the court may adjust the conditions to suit the current circumstances by eliminating conditions imposed at [the] sentence or adding new ones as the court considers necessary and appropriate" (People v Rodney E., 77 NY2d 672, 675-676 [1991]; see CPL 410.20 [1]; Penal Law § 65.00 [2]).
Therefore, if, at the imposition of the sentence or during the course of probation, a defendant asserts that they are unable to meet the financial obligations attendant to a certain condition, the sentencing court must hold a hearing on the matter (see Black v Romano, 471 US 606, 610-611 [1985]; Amorosi, 96 NY2d at 184; People v Hall-Wilson, 69 NY2d 154, 156-157 [1987]; see generally CPL 420.10 [5]). The defendant must be given the opportunity to be heard in person, present witnesses, and offer documentary evidence establishing that they made sufficient bona fide efforts to pay (see CPL 410.70 [3]; Romano, 471 US at 610-612; Amorosi, 96 NY2d at 184). If, after such inquiry, the sentencing court determines that the defendant{**32 NY3d at 633} has adequately demonstrated an inability to pay the costs associated with a particular condition despite bona fide efforts to do so, the court must attempt to fashion a reasonable alternative to incarceration (see Amorosi, 96 NY2d at 184; see also Bearden, 461 US at 668-669). Conversely, if the sentencing court determines, by a preponderance of the evidence (see CPL 410.70 [3]), that "a probationer has willfully refused to pay . . . when [that defendant] can pay, the [court] is justified in revoking probation and using imprisonment as an appropriate penalty for the offense" (Amorosi, 96 NY2d at 184, citing Bearden at 668; see CPL 410.70 [1], [5]; Penal Law § 65.00 [2]; see also Rodney E., 77 NY2d at 676).
Here, the Appellate Division never reviewed defendant's challenges to County Court's finding that he was in willful violation of a condition of his probation. Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, and the case remitted to the Appellate Division for determination of the facts and issues raised, but not determined on appeal to that Court (see CPL 470.25 [2] [d]; 470.40 [2] [b]).

Rivera, J. (dissenting). The majority holds that a court may require a defendant to pay the daily expense for an electronic monitoring device that the court has ordered a defendant wear as a condition of probation. The plain language of the Penal Law § 65.10 does not authorize judicial imposition of such costs, and the history of the relevant provisions does not demonstrate a legislative intent to empower courts to condition a defendant's probation on payment for an electronic monitoring device, without guidance on how to exercise such discretion. Nor may we infer such authority given the existing statutory structure. The legislature has crafted a detailed scheme for the imposition of costs, fines, and fees, demonstrating that when it intends to impose a financial burden on a defendant it does so explicitly, and in accordance with its legislative design. Here, the legislature has not so acted, and it is not the role of this Court to substitute its judgment and judicially-created payment-for-probation rule in place of the legislature's silence. Therefore, I dissent.
I.
Defendant Brian Hakes pleaded guilty to driving while intoxicated, for which the court imposed a split sentence of five years of probation, the first six months to be served in jail. His{**32 NY3d at 634} probation included several conditions, one of which was to wear an alcohol monitoring device that, through contact with the skin, continuously monitors alcohol intake levels. The device at issue here is a "SCRAM bracelet," named after the company that developed it. The court required defendant to wear the device as long as the Probation Department deemed necessary. The court additionally imposed a separate condition that defendant pay for the cost of the SCRAM device. At the time the court imposed this condition, there was no discussion of the actual cost and whether defendant had to pay a lump sum or make periodic payments. Nor could the court provide defendant with an estimate of the total cost to be borne by him because the duration of the SCRAM device condition was subject to review by Probation.
Upon his release from jail, defendant went to have the SCRAM device installed by Rocky Mountain Offender Management Services (RMOMS), the private company contracted by Sullivan County to install and maintain SCRAM devices. As part of its contract with the County, RMOMS apparently reports the results of the monitoring to Probation.[FN1] At this first meeting, the RMOMS representative informed defendant that the SCRAM device carried an[*5]$11 per day cost but failed to advise him that RMOMS could reduce the daily charge to $4 if defendant had difficulty paying. Given these numbers, if Probation had required defendant to wear the SCRAM device for his entire period of probation, he would have owed RMOMS approximately $18,000. Even if RMOMS had reduced the fee to $4 per day (as it later told defendant it could), defendant would owe approximately $6,500 if required to wear the device for the full term. It could not have escaped the representative's attention that payment was a concern for defendant as his mother, who accompanied him to have the device installed, asked whether Medicaid covered the costs. The SCRAM is not a Medicaid-covered device and even though the court-imposed payment condition was solely the responsibility of defendant, his mother made an initial payment of $160 on his behalf at this first meeting.
Defendant wore the SCRAM device for almost four months without incident. During that time, defendant lived on a subsistence level by working odd jobs and living rent-free in his{**32 NY3d at 635} aunt's home with his mother. Defendant's mother had recently lost her job and she used her Social Security benefits of $652 per month to buy groceries and other necessities for the two of them. They also received meal assistance from their church food pantry. Still, defendant gave his meager earnings to his mother to help pay for the SCRAM device, which she used, along with what remained of her own money, to make a second payment of $300 to RMOMS. At some point, defendant broke his wrist while working and it became even more difficult to pay for the SCRAM device, and so his debt mounted.
Soon after this second payment, a RMOMS representative told defendant he owed $717 in arrears. When defendant replied he could not pay, the representative finally informed him of the $4 reduced payment option, which was the best she could do for him because, as she explained, RMOMS would not provide the device free of charge. Defendant said he was unable to pay any amount. The RMOMS representative, after speaking with defendant's probation officer, then removed the device.
Probation filed a petition for violation of probation against defendant. Up until the time of the alleged violation, defendant had fully complied with all other conditions of probation. In fact, defendant's counselor recommended to the court that it was no longer necessary for defendant to wear the device.
The evidence at a hearing on the violation petition established defendant had no income. Nevertheless, the trial court held that defendant had willfully failed to comply with the condition that he pay for the SCRAM device, and thus revoked his probation and sentenced him to 1 to 3 years in prison. The court explained that its decision was "not premised upon finding that Mr. Hakes is indigent." "Sentencing today deals with accountability. When an agreement is made and accommodations are given, they're given with an expectation of living up to his end of the bargain."
The Appellate Division, reversed, holding that, while County Court could require defendant to wear an electronic monitoring device, it did not have statutory authority to require him to pay for the cost of the monitoring program (People v Hakes, 143 AD3d 1054, 1056 [3d Dept 2016]). On appeal before us, the People argue that the court has the authority under Penal Law § 65.10 (5) because requiring payment was a "reasonable condition" that the court determined was "necessary or appropriate {**32 NY3d at 636}to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant." Defendant argues that the condition of payment does not meet that standard and therefore is not authorized. The Appellate Division and defendant are correct that the statute does not authorize the court-imposed cost on defendant.
II.
The legislature has authorized courts to impose conditions on probation, "as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so" (Penal Law § 65.10 [1]). The legislature has set forth a list of conditions intended as rehabilitative (Penal Law § 65.10 [2]). It has also provided for certain conditions that are not primarily related to rehabilitation. Thus, subdivision (4) permits the court, as part of a sentence of probation, to "require the defendant to submit to the use of an electronic monitoring device and/or to follow a schedule that governs the defendant's daily movement" when the court determines that the condition "will advance public safety, probationer control or probationer surveillance" (Penal Law § 65.10 [4]). [*6]Further, subdivision (5), titled "Other conditions," permits the court "in addition to any conditions imposed pursuant to subdivisions two, three and four of this section, require that the defendant comply with any other reasonable condition as the court shall determine to be necessary or appropriate to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant" (Penal Law § 65.10 [5]).
Subdivisions (4) and (5) were added in response to this Court's holdings in People v Letterlough (86 NY2d 259 [1995]) and People v McNair (87 NY2d 772 [1996]). In Letterlough, this Court recognized that the overriding purpose of imposing a sentence of probation under Penal Law § 65.10 is to rehabilitate the offender. Although there is overlap "between rehabilitative and punitive or deterrent sanctions, the Legislature did not mention punishment or deterrence as goals to be obtained through the imposition of probationary conditions pursuant to Penal Law § 65.10. Rather, Penal Law § 65.10 quite clearly restricts probation conditions to those reasonably related to a defendant's rehabilitation" (86 NY2d at 265). Thus, the Court held that the legislature had authorized only those conditions of probation that are fundamentally rehabilitative and could{**32 NY3d at 637} not impose a punitive or public safety condition under the "catch all" provision of Penal Law § 65.10 (2) (l), under which the court could impose "any other conditions reasonably related to [defendant's] rehabilitation" (id. at 266-267). Shortly thereafter, in People v McNair, the Court held, in accordance with Letterlough, that the sentencing court was not legally authorized to require the defendant to wear a global positioning system (GPS) monitoring device as a condition of probation under Penal Law § 65.10 (2) (l), because the sentencing court's "true aims . . . were public safety and surveillance, not rehabilitation" (87 NY2d at 775).
It is clear from the legislative history that subdivisions (4) and (5) are intended to allow a court to authorize conditions of probation for public safety purposes, so that the condition imposed under these sections does not need to have a "fundamentally rehabilitative purpose." At the same time, the legislature maintained that these amendments would not change the "fundamental nature of the probation sentence" (see Letter from Joseph R. Lentol, Chairman, Assembly Comm on Codes, to Governor George E. Pataki, July 23, 1996 at 2, Bill Jacket, L 1996, ch 653 at 6; Governor's Approval Mem, Bill Jacket, L 1996, ch 653, 1996 NY Legis Ann at 484; Mem of Div of Probation and Corr Alternatives, Bill Jacket, L 1996, ch 653). The text and legislative history of subdivision (4) strongly suggest the legislature intended to authorize GPS surveillance, not SCRAM device-type monitoring. Notably, the legislature has not amended subdivision (4), even as courts have imposed non-GPS monitoring conditions. In any case, the scope of subdivision (4) is not at issue on this appeal as defendant does not challenge whether a SCRAM device falls within the broad statutory language.
The legislature took the language of subdivision (5) directly from section 353.2 (h) of the Family Court Act (Governor's Approval Mem, Bill Jacket, L 1996, ch 653, 1996 NY Legis Ann at 485). As the sponsor's letter explains, adoption of this language was intended "not [to] change the fundamental nature of the probation sentence, but [to] help ensure that it can be used effectively" (Letter from Joseph R. Lentol, Chairman, Assembly Comm on Codes, to Governor George E. Pataki, July 23, 1996 at 2, Bill Jacket, L 1996, ch 653 at 6). In other words, "subdivision 5 . . . afford[s] sentencing judges with greater flexibility in imposing other conditions of probation, for it effectively overrules the McNair Court's conclusion that a{**32 NY3d at 638} condition of probation must have a 'fundamentally rehabilitative purpose' " (Governor's Approval Mem, Bill Jacket, L 1996, ch 653 at 8, 1996 NY Legis Ann at 485). Likewise, the budget report recognized the bill's overall purpose as authorizing "courts to impose electronic monitoring and other conditions of probation in the interest of public safety" (Budget Rep, Bill Jacket, L 1996, ch 653 at 9). A memorandum of the Division of Probation and Correctional Alternatives in support of the bill stressed this very purpose, and further explained its belief that "public safety, offender accountability, and other deterrent conditions are reasonable and legitimate conditions and can mutually co-exist as part of any probation sentence" (Mem of Div of Probation and Corr Alternatives at 2, Bill Jacket, L 1996, ch 653 at 21). As the bill jacket materials make clear, the legislature's intent was to allow greater flexibility for courts to impose conditions that promote public safety specifically.
The People do not argue that subdivision (4) authorizes imposition of costs for the SCRAM device, but rather, that under the catch-all provision of subdivision (5), a court may impose the cost of a SCRAM device as a "reasonable condition" (Penal Law § 65.10 [5]). Thus, contrary to the majority's view, the People decouple the condition of wearing the device from the condition of paying for the device. Rightly so. However, the People ignore the express terms of subdivision (5) which contains two prongs: the condition must be reasonable and must be "necessary or appropriate to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant" (id.). The payment condition imposed on defendant does not meet this second prong. Defendant's conduct which gave rise to the underlying offense was driving while intoxicated. Requiring defendant to pay for the device itself is not necessary or appropriate to ameliorate his alcohol intake, because what matters is that he wear the [*7]device, not who pays for it. It is the wearing of the device that has the potential ameliorative effect. Nor is requiring a defendant to pay for electronic monitoring necessary to prevent the incarceration of the defendant; that can only be prevented by defendant not driving while intoxicated. Indeed, at best, the device monitors alcohol intake but does not, like the ignition interlock device—which may be imposed under Penal Law § 65.10 (2) (k-1)—immediately prevent defendant from getting behind the wheel {**32 NY3d at 639}and driving if his alcohol intake exceeds whatever limit set by the court.[FN2]
The majority concludes that the SCRAM device-payment condition is just like other "statutorily-authorized conditions of probation that implicitly require defendants to pay certain costs" (majority op at 
627). Therefore, the argument goes, the court is authorized to require defendant to pay for the device as a condition of his probation and as a condition of his liberty (id. at 
631). Essentially the majority's argument is that conditions of probation inherently cost something and, despite the lack of express statutory language to that effect, that something must be borne by defendant. There is no textual support for this interpretation of the statute.
First, the majority is incorrect that if there are costs incidental to the conditions that may be imposed by a court under Penal Law § 65.10 (2), then the legislature, sub silentio, has shifted payment of those costs to defendants. That is not how the legislature has written the statute. When the legislature intended to shift costs to a defendant, it did so explicitly, and also made provision for a defendant who is unable to pay, as in the case of Penal Law § 65.10 (2) (k-1). That section requires defendant to install an ignition interlock device and cross-references the Vehicle and Traffic Law. The Vehicle and Traffic Law, in turn, explicitly requires defendant to bear the cost of the device, stating that the cost shall be considered a "fine," and cross-references other provisions that specify exactly how the court may waive or reduce the fee and craft a payment plan (Vehicle and Traffic Law § 1198 [5]; CPL 420.10 [5]). If, as the majority opines, the court is inherently authorized to require a defendant, as a condition of probation, to pay any and all costs associated with a condition under Penal Law § 65.10 (2), then the legislature would have no occasion to extensively cross-reference provisions that lay out a detailed scheme for how, and under what circumstances, the court imposes costs for installation of an ignition interlock device.
Given the legislative structure, the majority's interpretation violates well-established canons of statutory construction that "the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (McKinney's Cons Laws of NY, Book 1,{**32 NY3d at 640} Statutes § 74), and "[a] court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit" (McKinney's Cons Laws of NY, Book 1, Statutes § 74). The judiciary's "duty is to construe rather than rewrite legislation" (Steelworkers v Weber, 443 US 193, 221 [1979, Rehnquist, J., dissenting]). "It is not the role of this, or indeed any, court to second-guess the determinations of the Legislature, the elective representatives of the people, in this regard" (Matter of Wolpoff v Cuomo, 80 NY2d 70, 79 [1992]). We are not at liberty to supply terms the legislature has chosen to omit.
Second, on its own terms the majority's interpretation is not necessary to achieve the legislature's overarching goal of rehabilitation. For any conditions listed in subdivision (2) (c)-(k-1) that have some "associated costs," the desired rehabilitative effects can be obtained regardless of who pays. To the extent the majority is concerned that the state will bear the costs unless a defendant pays (majority op at 
631), in fact, defendants have access to various forms of assistance available to the general public, including government subsidies, that would cover the costs. In any case, how government allocates its resources is a policy matter for the legislature not this Court (see Jiggetts v Grinker, 75 NY2d 411, 415 [1990] ["Broad policy choices, which involve the ordering of priorities and the allocation of finite resources, are matters for the executive and legislative branches of government and the place to question their wisdom lies not in the courts but elsewhere"]). While the majority's interpretation does not serve the statute's rehabilitative goals, it potentially undermines them by reading the statute to automatically shift any costs to defendants. Placing costs of a condition of probation on a defendant carries the potential for imposing crushing debt [*8]that can only undermine rehabilitation and reintegration into society. Indeed, the New York City Bar has recently recommended that the State re-examine statutorily authorized fees "as they are a revenue-generating mechanism that has been disproportionately imposed upon those least able to pay" (Report by the Committee on Criminal Justice Operations, Committee on Corrections and Community Reentry, Committee on Criminal Courts and Task Force on Mass Incarceration, New York Should Re-Examine Mandatory Court Fees, Nov. 26, 2018, available at https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/new-york-should-re-examine-mandatory-court-fees [last{**32 NY3d at 641}visited Dec. 4, 2018]). Creating circumstances that would render a defendant a pauper does not teach individual accountability.
III.
To the extent the majority concludes that paying the costs are merely "part and parcel" of the condition that the defendant wear the device (majority op at 
627, 631), that view does not square with the legislature's customary manner for imposing a financial obligation on a defendant. A review of the legislature's detailed statutory scheme for imposing costs, fees, and fines belies the majority's interpretation of Penal Law § 65.10.
A.
Legislation governs a defendant's obligation to pay costs associated with a criminal conviction. Penal Law § 60.27 authorizes the court to impose restitution or reparation as part of a defendant's sentence, in accordance with various and extensive sections of the Criminal Procedure Law which dictate how restitution or reparation is collected and remitted. For example, CPL 420.10 (1) (a) (i)-(iii) authorize the court to require the defendant to pay fines, restitution, or reparation at the time of sentencing, at a later date, or pursuant to a payment plan. Criminal Procedure Law § 420.10 (1) (b) further establishes that payment of restitution or reparation takes priority over any fines. CPL 420.10 (1) (c) specifically authorizes a court that it can require payment of a fine, restitution, or reparation as a condition of probation. When the defendant fails to pay, CPL 420.10 (3) details the exact requirements for what a court must do in order to impose a sentence on a defendant if the defendant fails to pay fines, restitution, or reparation and CPL 420.10 (4) specifies the exact periods of imprisonment the court is authorized to impose for such failures to pay. If the defendant is unable to pay, CPL 420.10 (5) specifies that a defendant may apply for resentencing at any time and the statute requires the court to adjust the terms of payment, lower the amount, or revoke the portion of the sentence imposing the fine or restitution.
Other statutory provisions set forth additional types of payments. Penal Law § 60.35 requires the court to levy at sentencing a mandatory surcharge, a sex offender registration fee, a DNA databank fee, a supplemental sex offender victim fee, and a crime victim assistance fee, as applicable to the case, and details the exact dollar amounts of these fees. Subdivision (6){**32 NY3d at 642} of Penal Law § 60.35 expressly provides that where a person has made restitution or reparation that person shall not be required to pay a mandatory surcharge or a crime victim assistance fee. Similarly, Vehicle and Traffic Law § 1809 details a different amount of payment for mandatory surcharge and crime victim assistance fee in certain cases under the Vehicle and Traffic Law.
There is also legislation imposing the cost of a "probation administrative fee" on defendants under probation for DUI infractions. Executive Law § 257-c permits every county to adopt a local law requiring individuals serving probation for DUI offenses
"to pay to the local probation department with the responsibility of supervising the probationer an administrative fee of thirty dollars per month. The department shall waive all or part of such fee where, because of the indigence of the offender, the payment of such surcharge would work an unreasonable hardship on the person convicted, his or her immediate family, or any other person who is dependent on such person for financial support" (Executive Law § 257-c [1]).
It mandates that CPL 420.10 governs for collection of the administrative fee and expressly states that "[t]he probation administrative fee authorized by this section shall not constitute nor be imposed as a condition or probation" (Executive Law § 257-c [3] [emphasis added]). The requirement that the probation fee not be imposed as a condition [*9]of probation clearly suggests that the legislature did not want the availability of probation to be contingent upon the defendant's ability to pay for their own probation monitoring.[FN3] 
As these examples illustrate, when the legislature intends either to impose costs on a defendant or to authorize the court to do so, it says so expressly, in painstaking detail, and with a consideration of a defendant's ability to pay. The majority ignores this extensive body of legislatively crafted cost-shifting, and, turning the argument on its head, finds the costs are authorized because the defendant is unable to show that the legislature expressly intended for the State to bear the cost{**32 NY3d at 643} (majority op at 
631). As I have discussed, that approach is counter to our statutory rules and the legislative structure.
Moreover, the majority mistakenly relies on People v Amorosi (96 NY2d 180 [2001]) to craft its own judicially-created rule for how a court should proceed when a defendant is unable to pay for the costs of the monitoring device (majority op at 
632). Amorosi merely stands for the proposition that a court is empowered to revoke a defendant's probation and impose imprisonment when restitution was a condition of probation and the defendant willfully failed to pay (96 NY2d at 184-185). Such conclusion is hardly surprising given that the legislature has expressly provided that restitution can be made a condition of probation (Penal Law § 65.10 [2] [g]; CPL 420.10 [1] [c]). Amorosi stands for nothing more than the recognition that the court has that statutory authority. No such authority exists here.
IV.
It may well be that the legislature would add a requirement that a defendant, when able, shall bear all or part of the costs for an electronic monitoring device condition pursuant to subdivision (4). Alternatively, the legislature might decide that the savings of keeping defendants out of prison offsets or exceeds the costs of a monitoring device and that it is better to expand the usage of the device than to shift costs to individual defendants, some of whom may not be able to pay in a given case. Such a conclusion would not be at all be surprising since, in years past, the average cost of imprisoning a defendant in New York was around $60,000 per year compared to an average cost of $2,400 per probationer.[FN4] The legislature might decide that costs for monitoring devices are more than paid for by the saving of over $57,000 gained by keeping a defendant out of prison. The legislature was well aware of these costs savings as it [*10]cited them in support of its enactment of subdivisions (4) and (5).[FN5] We do not know because the legislative text is silent about{**32 NY3d at 644} these possible policy considerations and how the legislature may or would weigh them.
Finally, the majority's concern that courts would not provide for probation unless a defendant bore the costs assumes the State is unwilling or unable to pay (majority op at 
632). As I have discussed, a defendant may be eligible like anyone else for government assistance with the costs of employment or education, just to name two types of conditions (Penal Law § 65.10 [2] [c]). Moreover, apart from assistance available for individuals, there is significant funding distributed to county probation services through a block grant program operated by the state (Executive Law § 246; 9 NYCRR part 345).
For the reasons I have discussed, the statute does not authorize judicial imposition of costs for an electronic monitoring device. Whether such authorization is a good idea requires balancing various social and economic policies and concerns—a task solely for the legislature. I dissent.
Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Wilson concur; Judge Rivera dissents in an opinion.
Order, insofar as appealed from, reversed and case remitted to the Appellate Division, Third Department, for determination of the facts and issues raised but not determined on the appeal to that Court (CPL 470.25 [2] [d]; 470.40 [2] [b]).

Footnotes

Footnote 1:A SCRAM bracelet is an electronic monitoring device that continuously measures an individual's blood alcohol level through the perspiration in their skin. The device gathers information every 30 minutes and informs the monitoring company if any alcohol has been ingested. The monitoring company charges a fee for the daily monitoring of the device.

Footnote 2:The People do not dispute that the Appellate Division properly held that the sentencing court erred in imposing certain conditions on any postrelease supervision at the time of sentencing.

Footnote 3:Defendant's failure to object at County Court to the sentencing court's authority to require that he wear and pay for a SCRAM bracelet under Penal Law § 65.10 does not impede our review of that issue because "it involves the essential nature of the right to be sentenced as provided by law" (Letterlough, 86 NY2d at 263 n 1 [citation and internal quotation marks omitted], citing People v Fuller, 57 NY2d 152, 156 [1982]).

Footnote 1:The record is unclear as to how or when the SCRAM device provides readings to RMOMS, or what, if any, protocol RMOMS follows to alert Probation.

Footnote 2:Ignition interlock devices are calibrated depending on the condition of permissible alcohol intake set by the court (Vehicle and Traffic Law § 1198).

Footnote 3:In accordance with this provision, Sullivan County has a local law imposing this administrative fee on every person it places on probation (Sullivan County Code § 117-2).

Footnote 4:Vera Institute of Justice, The Price of Prisons: What Incarceration Costs Taxpayers (Jan. 2012), available at https://www.vera.org/publications/price-of-prisons-what-incarceration-costs-taxpayers (last visited Nov. 30, 2018); Council of State Governments Justice Center, NY State Probation Incarceration Study, available at https://csgjusticecenter.org/corrections/projects/ny-state-probation-incarceration-study/(last visited Nov. 30, 2018).

Footnote 5:Governor's Approval Mem, Bill Jacket, L 1996, ch 653 at 7, 1996 NY Legis Ann at 485 ("[A]lthough such a probationary sentence would have been the most appropriate sentence, some defendants have received prison sentences—at a greater cost to government"); Budget Rep, Bill Jacket, L 1996, ch 653 at 9-10 ("Without the option of electronic monitoring, some defendants may be sentenced to incarceration at a far greater cost"; "This bill may reduce the use of incarceration for offenders more appropriate for lower cost, community-based sanctions"; "Electronic monitoring has proven to be a cost effective alternative to incarceration for appropriate offenders"); Mem of Div of Probation and Corr Alternatives, Bill Jacket, L 1996, ch 653 at 21 ("The fact that over thirty local jurisdictions were using electronic monitoring in some form as part of probation supervision clearly attests to widespread recognition of its merit and in achieving jail and prison cost-savings"); Letter from Christopher A. Cernik, Counsel, New York State STOP-DWI Coordinators Assn, July 26, 1996, Bill Jacket 1996, ch 653 at 23 ("Furthermore, electronic monitoring often serves as an effective alternative to incarceration—fulfilling all of the previously stated objections while avoiding the costly imprisonment alternative").