People v Hakes (2019 NY Slip Op 00324)





People v Hakes


2019 NY Slip Op 00324


Decided on January 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 17, 2019

106480

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
BRIAN HAKES, Appellant.

Calendar Date: September 12, 2016

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Devine, JJ.


Donna Maria Lasher, Youngsville, for appellant.
James R. Farrell, District Attorney, Monticello (Meagan K. Galligan of counsel), for respondent.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal (upon remittal from the Court of Appeals) from a judgment of the County Court of Sullivan County (McGuire, J.), rendered December 4, 2013, which revoked defendant's probation and imposed a sentence of imprisonment.
As conditions of his probation, defendant was required to wear a Secure Continuous Remote Alcohol Monitoring (hereinafter SCRAM) bracelet and to pay Rocky Mountain Offender Management System (hereinafter RMOMS) the costs associated with it monitoring that bracelet. The SCRAM bracelet was ultimately removed because defendant informed RMOMS that he was unable to make the payments required for continued monitoring of the bracelet. After a violation of probation petition was filed against defendant and an evidentiary hearing was held, County Court found that defendant knowingly violated the cited terms of his probation based upon his failure to make adequate efforts to pay the costs required for continued SCRAM monitoring, revoked his probation and resentenced him to a prison term of 1 to 3 years. This Court reversed, based on our finding that a sentencing court may not require a defendant to pay for the cost associated with an electronic monitoring program (143 AD3d 1054 [2016], revd ___ NY3d ___, 2018 NY Slip Op 08538 [2018]). On appeal by the People (29 NY3d 997 [2017]), the Court of Appeals reversed, concluding that requiring defendant to wear and pay for a SCRAM bracelet as a condition of probation was "well within County Court's statutory authority under Penal Law § 65.10 (4)" (___ NY3d ___, ___, 2018 NY Slip Op 08538, *4 [2018]), and remitted to this Court to address in the first instance "defendant's challenge[] to County Court's finding that he was in willful violation of a condition of his probation" (id.).[FN1]
At a probation revocation hearing, "the People have the burden of proving by a preponderance of the evidence that [the] defendant violated a condition of his [or her] probation" (People v Songa, 132 AD3d 1071, 1072 [2015]; see CPL 410.70 [3]; People v Turner, 136 AD3d 1111, 1112 [2016], lv denied 27 NY3d 1140 [2016]). Where the basis for a defendant's violation of probation is premised upon, as here, his or her failure to make a court-ordered payment, "'a sentencing court must inquire into the reasons for the failure to pay'" (People v Songa, 132 AD3d at 1073, quoting Bearden v Georgia, 461 US 660, 672 [1983]). If the court — following a hearing where the defendant is afforded the opportunity to be heard in person and present evidence to establish that he or she made sufficient bona fide efforts to pay (see CPL 410.70 [1], [3]; People v Amorosi, 96 NY2d 180, 185 [2001]) — determines that "the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority" (Bearden v Georgia, 461 US at 672; accord People v Songa, 132 AD3d at 1073; see 2018 NY Slip Op 08538 at *4). If, however, the probationer cannot pay "despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment" (Bearden v Georgia, 461 US at 672; accord People v Amorosi, 96 NY2d at 184; People v Souffrance, 94 AD3d 1024, 1024 [2012]; see 2018 NY Slip Op 08538 at *4; People v Songa, 132 AD3d at 1073), as "depriving probationers of conditional freedom based simply on their indigence would be an invidious denial to one class of defendants of a substantial benefit available to another" (People v Amorosi, 96 NY2d at 184; see Bearden v Georgia, 461 US at 672-673; 2018 NY Slip Op 08538 at *4; People v Souffrance, 94 AD3d at 1024).
We agree with defendant that County Court erred in finding that the People established by a preponderance of the evidence that defendant violated the terms and conditions of his probation by willfully refusing to pay or failing to make sufficient good faith efforts to pay the cost of the SCRAM monitoring. Initially, the record reflects that when defendant received the SCRAM bracelet in June 2013, he acknowledged that he was financially responsible for the $11 daily cost associated with monitoring that device, that he raised no objection to that financial obligation and that his mother, using money from her savings, made an initial payment on his behalf of $160 and a subsequent payment of $300 in August 2013. Upon his release from jail in June 2013, defendant's sole source of food, shelter and transportation was his mother, who testified that, as a result of being laid off from her employment, her monthly income was derived from meager Social Security benefits, which she used for car, insurance and cable television payments. She used her $150-$175 in monthly disposable income to pay for groceries and the transportation that both she and defendant required.
Defendant testified that, after being released from jail, he assisted his former boss with odd jobs to make money, which he would give to his mother. In late August 2013, however, he sustained a broken arm and wrist while assisting his former boss. After his injury and related surgery, defendant continued to seek employment, but was unable to find suitable work due to his injuries and the fact that a previous employer had ceased operations. On September 24, 2013, defendant met with his case manager at RMOMS and informed her that he had no income and that he was unable to pay the $717 balance that he owed to RMOMS. Although defendant was afforded the opportunity at that time to fill out a financial waiver form that could have reduced the daily cost of the SCRAM monitoring to no less than $4, he was also told that he could continue to wear the device only if he could make a payment within the next two weeks, which defendant — who still had his arm in a cast at that time — explained he would be unable to do [FN2]. Further, defendant's mother testified that she was unable to make any additional payments on defendant's behalf given her financial circumstances and that her attempts to solicit financial help [*2]from her relatives were unsuccessful due to those relatives' own financial difficulties [FN3]. In view of the foregoing, the record lacks a basis to substantiate a finding that defendant willfully refused to make the required payments. Moreover, the hearing testimony establishes that defendant made sufficient bona fide efforts to acquire the fiscal resources to pay the costs associated with SCRAM monitoring and that he could not do so as a result of his indigence, which resulted, at least in part, from the serious injuries that he sustained in August 2013. In our view, County Court was therefore required to "consider alternate measures of punishment other than imprisonment" and erred in failing to do so (Bearden v Georgia, 461 US at 672; see People v Amorosi, 96 NY2d at 184). Accordingly, we reverse the judgment revoking defendant's probation and imposing a sentence of imprisonment.
Egan Jr., J.P., Lynch, Clark and Devine, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Sullivan County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: In our previous decision, we also held that County Court erred by imposing at sentencing certain conditions relative to defendant's postrelease supervision (143 AD3d at 1056). On appeal to the Court of Appeals, the People did not challenge that holding (2018 NY Slip Op 08538 at *2 n 2).

Footnote 2: We find it significant that, when defendant first met with his RMOMS case manager in June 2013, she failed to mention to defendant that he could apply for a financial waiver, even after defendant's mother inquired whether Medicaid could be used to cover the costs of SCRAM monitoring.

Footnote 3: We note that relatives, including defendant's mother, have no obligation to support defendant, who is an adult. These requests made to relatives are relevant, however, to the extent that they pertain to good faith efforts to acquire resources to make the required payments.